■ In the Matter of MUZAFFAR S. ABDULLAH et al., Appellants, v THOMAS A. COUGHLIN, III, as Commissioner of the New York State Department of Correctional Services, et al., Respondents.—In a proceeding pursuant to CPLR article 78 to compel the respondent Commissioner of the New York State Department of Correctional Services to comply with the petitioners' request that all Sunni Moslems incarcerated at Green Haven Correctional Facility (hereinafter Green Haven) be permitted to shower on Friday mornings prior to religious services, the petitioners appeal from a judgment of the Supreme Court, Dutchess County (West, J.), dated January 18, 1985, which, after a hearing, dismissed the petition.

Ordered that the judgment is affirmed, without costs or disbursements.

There were approximately 80 Sunni Moslems in Green Haven at the time of the hearing, who were housed in 33 different companies. Housing in Green Haven is determined by job assignment, and all honor prisoners are housed in D block. Prisoners take showers in the shower room of the company to which they are assigned. Each of these company shower rooms has only two shower heads. The use of these showers by all prisoners, except those in the honor block, is under the supervision of a correction officer. There are valid institutional reasons for this supervision, namely, to prevent the transfer of contraband or to prevent homosexual attacks.

Green Haven provides a religious service, Jummah, for Sunni Moslems each Friday afternoon between 1:00 and 4:00 P.M. Observant Sunnis are required to undergo a ritual cleansing or bathing prior to attending Jummah services. According to the testimony of the three Sunni prisoners who testified at the hearing, each of them has been able to accomplish this religious requirement using the sinks in their cells between 11:00 to 11:30 A.M. when all prisoners are required to be in their cells for a master count. This testimony clearly indicated that the petitioners' request for showers was not based on religious requirements, but on their own convenience.

This case is clearly distinguishable from those cases where prison procedures actively violated the religious beliefs or practices of prisoners (see, e.g., Matter of Rivera v Smith, 63 NY2d 501 [frisks of Moslem prisoners by female correction officers]; People v Lewis, 115 AD2d 597, affd 68 NY2d 923 [cutting hair for identification photographs]). While these cases involved prison procedures that were grounded in valid institutional concerns, there were alternative procedures

available that did not require significant additional manpower or costs and would not violate the religious beliefs or practices of the prisoners. Nothing indicates that the respondents in this case prohibited the petitioners or other Sunni Moslems from practicing their religion, as was the case in *Matter of Abdullah v Smith* (96 AD2d 742).

It has been recognized, however, that certain rights of prisoners to the free exercise of their religious beliefs and practices may be curtailed if they conflict with lawful institutional objectives *(Matter of Shahid v Coughlin,* 83 AD2d 8, *affd* 56 NY2d 987, *rearg denied* 57 NY2d 775). In the case at bar, the petitioners want to compel the respondents to change established prison procedures based on valid institutional objectives, not because they prohibit or interfere with the religious practices of the prisoners, but because it would be more convenient for the prisoners. Such inconveniences are part of the petitioners' status as prisoners and unless they violate essential constitutional rights, will not warrant changes.

Our dissenting colleague points out that at the time of the hearing, prisoners housed in two cell blocks, D and J, could take showers on Friday morning. This is so because all residents of D block are honor prisoners, not subject to the same degree of supervision as the general prison population, and J block is unique in its physical arrangement. J block is the only block in Green Haven that is only two stories high and the shower rooms are so situated that they are visible to the first officer, who occupies a fixed post. Furthermore, the only prisoners resident in D or J blocks who take showers on Friday morning are those who do not have school or work assignments during the morning program from the hours of 8:15 A.M. to 11:10 A.M.

It should be noted that the testimony elicited at the hearing demonstrated that the authorities at Green Haven were sensitive to the religious requirements of Sunni Moslems and other religious groups within the institution. During the month of Ramadan, Sunni Moslems may not eat during daylight hours. All Moslems in Green Haven, Sunnis and other Moslem groups, are excused from the compulsory noon meal. A special evening meal, after sundown, is provided for the Moslems. This requires the institution to provide extra security personnel and correction officers to incur overtime. As a result of foregoing the noon meal during Ramadan, Moslem prisoners are confined to their cells between 11:00 A.M. and 1:00 P.M. Green Haven permits these prisoners to shower during this

period whenever there is sufficient security coverage to supervise the shower rooms. This is not possible in all companies or on all days of Ramadan, but is permitted where possible. Such conduct hardly demonstrates any invidious discrimination by the respondents against Moslem prisoners. Niehoff, J. P., Lawrence and Sullivan, JJ., concur.

Weinstein, J., dissents, and votes to reverse the judgment appealed from and grant the petition, with the following memorandum: As per my view of the evidence, the respondents have failed to demonstrate how the practice of allowing Friday morning showers for the Sunni Muslim inmates at the Green Haven Correctional Facility poses a substantial risk to any legitimate institutional objective. The Deputy Superintendent for Security Services who testified on behalf of the respondents admitted that it was not uncommon within the facility to afford extra privileges to religious groups for festivals or holidays. The accommodations made for these groups also required extra security measures. In light of this unequivocal admission, the disparate treatment being afforded the requests of the Sunni Muslim inmates by means of the regulation denying them Friday morning showers as a required ritual cleansing is difficult to justify.

The hearing court's recitation of the need for additional security staff to transport the prisoners and to oversee the shower area and its finding that granting the petition would necessarily entail scheduling and disciplinary problems inasmuch as the inmates are housed not according to religious persuasion, but, rather, by job assignments, do not justify denial of the petition. The Deputy Superintendent for Security Services revealed that there are some inmates who return to their cell blocks after breakfast and who spend the morning program in their cells. There are Sunni Muslim inmates in approximately 33 of the 54 companies in the facility. Each of these companies already has one officer assigned to them. Each company has one shower with "two showerheads in most of them" for a total of 12 showerheads per block. No more than two men may shower at the same time. The fact that the Sunni Muslim population is scattered throughout the facility rather than clustered in any one particular company is thus beneficial in terms of timing. Moreover, a directive that the Sunni Muslim inmates be relegated to using the sinks in their cells is not a viable alternative to allowing them hot showers. As the Supreme Court aptly recognized in its decision, the use of the sink in an inmate's cell for the ritual cleansing is problematic inasmuch as it takes up to 45 minutes as opposed

to a five-minute shower and creates the potential hazard of wet cell floors. Thus, the majority's categorization of the underlying issue as one of inmates' convenience as opposed to religious freedom is inaccurate. While I respect my colleagues' view that inconveniences are part of the petitioners' status as prisoners, the gravamen of the instant petition is far more fundamental than a mere matter of convenience.

The respondents' position is seriously undermined by the fact that although preservice showers were permitted during the holy month of Ramadan, there were no additional security officers employed other than those hired to cover the late evening meal for Moslem inmates. Notwithstanding the absence of the allegedly vital extra security personnel, there are at least two cell blocks in which the Friday morning showers have been proceeding with no problems whatsoever. Stated succinctly, the objections advanced by the respondents with respect to scheduling problems and the increased cost of security merely illustrate administrative inconvenience as opposed to valid penological concerns.

It bears noting that the petitioners herein are not seeking additional privileges beyond that to which all inmates are entitled. They seek merely to substitute one of their three scheduled weekly showers and reschedule it to Friday mornings prior to attending their religious services.

The concern of this court for the free exercise of religious beliefs is cogently demonstrated in *People v Lewis* (115 AD2d 597, *affd* 68 NY2d 923), where it was held that the enforcement of a haircut directive would unnecessarily violate the religious rights of the respondent, an avowed Rastafarian. In my view, the petitioners' right to meaningfully practice their religious beliefs should not be made to depend upon the availability of security officers. In light of the facility's previously exhibited willingness to accommodate inmates of most religious persuasions and the fact that there currently exist cell blocks at which showers can be taken on Friday mornings with no problem of increased supervision, there was no basis for the denial of the petition. Notwithstanding the fact that cell block D may be more architecturally suited than others to accommodate Friday morning showers, the reliance upon that factor to determine whether certain inmates shall be free to practice a vital religious ritual leads ineluctably to arbitrary enforcement.

Since the respondents failed to establish that their refusal to comply with the petitioners' demand was supported by

valid institutional needs and objectives *(see, Matter of Rivera v Smith,* 63 NY2d 501; *Matter of Abdullah v Smith,* 96 AD2d 742),* the judgment appealed from should be reversed and the petition granted.