Frankie CANCEL, Plaintiff,

v.

**William MAZZUCA, Superintendent of Fishkill Correctional Facility, et al., Defendants.**

**No. 01 CIV. 3129(NRB).**

United States District Court, S.D. New York.

March 27, 2002.

---

Frankie Cancel, Attica, NY, Pro Se.

Rebecca Ann Durden, Assistant Attorney General, New York City, Counsel for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Frankie Cancel, a state prisoner in the custody of the New York State Department of Correctional Services ("DOCS"), brings this civil rights action against thirty one DOCS employees for violations of his First and Fourteenth Amendment rights, as well as for violations of New York State law.[1] Before the Court are a motion by Mr. Cancel for partial summary judgment as well as motions by all defendants for dismissal of the action. For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

The core of Mr. Cancel's Amended Complaint is that the DOCS employees named as defendants all played a role in violating his Federal Constitutional right to the free exercise of religion. Mr. Cancel, a member of the Shi'a sect of Islam, believed that he and his fellow Shi'ites were being deprived of the freedom to practice their religion by DOCS's Islamic authorities, who were allegedly members of the rival Sunni sect. He filed an inmate grievance claiming that DOCS's chief Imam,[2] a Sunni, "and his underlings attempted to dissuade, proselytized, and cause me to give up my Shi'a beliefs that I hold dear," and sought, *inter alia,* permission for outside Shi'ites to come to the prison to lead Shi'a religious services. Pl.'s Mem. Exs. at 22. On the advice of DOCS's Islamic Affairs Coordinator that all Muslims practice the same faith, and therefore do not require separate services, the grievance was denied. *Id.* at 25. Mr. Cancel then brought an Article 78 petition in New York State court, which held that "the denial of the grievance was arbitrary and capricious and in violation of [New York] Correction Law § 610." *Cancel v. Goord,* 278 A.D.2d 321, 717 N.Y.S.2d 610, 612 (2d Dep't 2000), *aff'g Cancel v. Goord,* 181 Misc.2d 363, 695 N.Y.S.2d 267 (N.Y.Sup.1999), *leave to appeal denied,* 96 N.Y.2d 707, 725 N.Y.S.2d 638, 749 N.E.2d 207 (2001). Mr. Cancel now brings this § 1983 action seeking money damages.

## DISCUSSION

### I. Legal Standard

For purposes of Mr. Cancel's motion for partial summary judgment, we apply the familiar summary judgment standard of Federal Rule of Civil Procedure 56(c). See, e.g., *Pappas v. Giuliani,* 118 F.Supp.2d 433, 436–37 (S.D.N.Y.2000). For purposes of defendant's motions for dismissal, we accept as true all material factual allegations in the complaint, *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), and may grant the motions only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996).

---

1. While one of the headings in the Amended Complaint is entitled "First Amendment Establishment Clause," it is clear that this cause of action is mislabeled. *See* Am. Compl. ¶ 119–120. This cause of action is for "violation of the equal protection of the laws as enshrined in the Fourteenth amendment of the Constitution." *Id.* ¶ 120.

2. An imam is a Muslim spiritual leader, analogous to a priest or rabbi.

## II. Factual Background [3]

Mr. Cancel practices the Shi'a branch of Islam, which is separate and distinct from the Sunni branch. While Shi'ites and Sunnis both agree on the fundamental tenets of Islam, they disagree as to the identity of the legitimate successors to the Prophet Muhammad. *See Pugh v. Goord,* 184 F.Supp.2d 326, 328 (S.D.N.Y.2002). Most Shi'ites and Sunnis co-exist harmoniously, but one puritanical faction of Sunni, known as Wahhabi, view Shi'ites as infidels and heretics. Pl.'s Mem. Exs. at 60–61. At least some adherents to the Wahhabi school are violently opposed to Shi'ites and other non-Sunnis, and view it as their duty to impose the "true" Sunni belief system upon them.[4] *Id.*

Mr. Cancel was transferred to the Fishkill Correctional Facility ("Fishkill") in March 1998, and was introduced to Salahuddin Muhammad, Fishkill's Imam, who questioned him about his beliefs and gave him a copy of the bylaws of the Fishkill Muslim community. Am. Compl. ¶ 39. While Mr. Cancel was at Fishkill, Imam Muhammad "subjected [him] and his fellow Shi'a muslims to abusive rhetoric, diatribes, and proselytizations in the various services [the Imam conducted,] denigrating Shi'a believers [as], *inter alia,* 'hypocrites' to shame them into converting [to] the Sunni group."[5] Am. Compl. ¶ 41.

On April 27, 1998, one of Mr. Cancel's fellow Shi'a inmates sent a formal complaint to defendant Ada Perez, the Deputy Superintendent for Programs at Fishkill, stating that Imam Muhammad had decreed that Muslims at Fishkill "*must* accept [his] Wahhabist[ ] dogmatic theology and conform to [his] brand of Islam" in order to participate in Islamic services or access the prison mosque to engage in religious study. Pl.'s Mem. Exs. at 7; Am. Compl. ¶¶ 42–43. Shortly thereafter, Mr. Cancel and the other Shi'a were removed from the "call out" list and prevented from participating in certain Islamic functions at the prison. Am. Compl. ¶ 42. A request was subsequently made to Ms. Perez for a separate "call out" for Shi'a inmates in order to gather and celebrate a Shi'a holiday, but this request was not granted. Pl.'s Mem. Exs. at 9. Ms. Perez spoke with Imam Muhammad, who informed her that the Shi'a were banned from the mosque for being disruptive during a study group. She accepted this explanation, and, accordingly, took no action, apart from forwarding the complaint to defendant Anthony Annucci, DOCS Deputy Commissioner and Head Counsel. *Id.* at 10.

Thus, on June 26, 1998, Mr. Cancel filed an inmate grievance complaint (the "Fishkill Grievance") requesting that DOCS take measures to prevent proselytization, ensure fair treatment of Shi'a by the Sunni Muslim leadership at Fishkill, and permit access to outside Shi'a Imams or other volunteers. Am. Compl. ¶ 47. Defendants Thomas Goetz, Robert Kirkpatrick, John

---

3. While Mr. Cancel's summary judgment motion does not require a fact-intensive inquiry, for purposes of defendants' motions to dismiss, we must accept Mr. Cancel's allegations as true. Accordingly, the "facts" discussed herein are those alleged by Mr. Cancel. We make no findings of fact as to the actions and events for which Mr. Cancel seeks relief.

4. The former rulers of Afghanistan, the Taliban, are Wahhabi Sunnis. *See* Douglas Jehl, *Moderate Muslims Fear Their Message is Being Ignored,* N.Y. TIMES, Oct. 21, 2001, at 1B:1. Apparently, however, there is no monopoly on terrorism. According to press reports, at least some Shi'ites engage in suicide bombings and other acts of terrorism in the name of their faith. *See* John Kifner, *Shi'ite Radicals: Rising Wrath Jars the Mideast,* N.Y. TIMES, Mar. 22, 1987, at 1.

5. Notably, Imam Muhammad is not a party to this action.

Culkin, Larry Zwillinger, and Melvin E. Brown, as the voting members of DOCS's Inmate Grievance Program Central Office Review Committee ("CORC"), denied the Fishkill Grievance on July 29, 1998:

> Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied.

> CORC has been advised by [Imam Umar] that all Muslim religious groups fall under Islam, with the exception of [Nation of Islam]. All practice the same faith and should not be separated, as the grievant suggests.

> Contrary to the grievant's assertions, CORC notes that the grievant is not being deprived of his right to practice his religion [because] there is no requirement that separate re[l]igious advisors and/or services be provided to the various religious sects.

Pl.'s Mem. Exs. at 25 (full text).

Mr. Cancel subsequently commenced an Article 78 proceeding before the New York State Supreme Court for Dutchess County, naming defendant Glen S. Goord, Commissioner of DOCS, as respondent, claiming that CORC's decision was arbitrary and capricious. On July 6, 1999, the Supreme Court, after expanding the administrative record, found for Mr. Cancel, concluding as follows:

> The court has reviewed the petitioner's submissions and finds that the differences between the historical and doctrinal beliefs, as well as the religious practices, of the two groups [Sunni and Shi'a] are significant. The nature of these differences mandates the conclusion that respondent's determination

that the spiritual needs of the inmates of the Shi'a Muslim faith can be met in religious services led by chaplains of the Sunni Muslim faith is arbitrary and capricious. Respondent's determination is contrary to the objectives of DOCS Directive No. 4202 and the First Amendment right of religious liberty (U.S. Const. First Amend.) upon which it is based. For this reason, it is hereby ordered and adjudged that the petition is granted and respondent's July 29, 1998 determination is annulled[.]

*Cancel*, 695 N.Y.S.2d at 269. The Supreme Court further ordered Commissioner Goord to permit Shi'a inmates to "have contact with a [properly registered] volunteer Shi'a scholar," or, if such a volunteer is unavailable, to permit Shi'a inmates to study on their own up to once a week in the presence of prison security staff. *Id.*

At least one Shi'a volunteer stepped forward in response to this ruling, but defendant William Mazzuca, the facility's superintendent, did not permit him to visit Fishkill, as the Supreme Court's decision was "in abeyance." Pl.'s Mem. Exs. at 30–34. Mr. Cancel appealed this denial to CORC, which upheld it on May 24, 2000. *Id.* at 35. On December 11, 2000, although applying a different *ratio decidendi*, the Appellate Division affirmed the substance of the Supreme Court's decision in the Article 78 litigation but, significantly, struck those parts of the lower court's opinion that ordered specific actions to be taken by DOCS, leaving it to DOCS in the first instance to devise the appropriate accommodation. *Cancel*, 717 N.Y.S.2d at 612.[6]

At some point,[7] Mr. Cancel was transferred to the Franklin Correctional Facili-

---

**6.** Commissioner Goord unsuccessfully sought leave to appeal to the New York Court of Appeals, 96 N.Y.2d 707 (2001).

**7.** The Amended Complaint does not specifically indicate when Mr. Cancel was transferred, but it appears that it occurred in late 2000 or very early 2001.

ty ("Franklin"). On January 5, 2001, he attempted to attend a Muslim religious service at Franklin, but was prevented from doing so by defendant Corrections Officer Chris Degon. Am. Compl. ¶ 113. Mr. Cancel also met with the Franklin Imam, defendant At–Tayeb, and requested permission for outside speakers to enter the facility for an upcoming Muslim holiday. Am. Compl. ¶ 80. When Mr. Cancel disclosed that the proposed speakers were from the Shi'a community, Imam At–Tayeb "told plaintiff that people who hold [Shi'a] beliefs are suspect and hypocrites," and refused to permit their attendance at the holiday service. Id. ¶ 81. Imam At–Tayeb did, however, permit five Sunnis to enter the facility and speak at the holiday service. Id. ¶ 82. Mr. Cancel filed another grievance (the "At–Tayeb Grievance") based on this incident. See Durden Decl. Ex. G. Mr. Cancel was told by other inmates that Imam At–Tayeb referred to him as an "evil person" who was causing division and problems among the inmate Muslim community by filing the At–Tayeb Grievance. Am. Compl. ¶ 83.

On January 29, 2001, former defendant John R. Demars,[8] a Deputy Superintendent at Franklin, spoke with Mr. Cancel as part of an investigation of the At–Tayeb Grievance. Id. ¶ 84. The following day, defendant Roy Girdich denied the grievance on the ground that there was merely a "miscommunication" regarding the proposed visit, and that Imam At–Tayeb "did not knowingly deny [Mr. Cancel] access to a Shi'a clergy." Durden Decl. Ex. G. This denial was subsequently upheld by CORC. Id.

On February 1, 2001, the day he received notice of the denial of the At–Tayeb

Grievance, Mr. Cancel was escorted to speak to defendant W. St. Dennis, a DOCS employee at Franklin, who told him that, based on information obtained from Imam At–Tayeb, it had been " 'determined that [Mr. Cancel had] been trying to undermine the muslim community.' " Am. Compl. ¶ 89. Mr. Cancel told Mr. St. Dennis about his Article 78 litigation and "advised [him] that it was unconstitutional to retaliate against him for his peaceful protected activity." Id. ¶ 91. Nevertheless, it was determined by "the administration" that Mr. Cancel was to be placed in the Special Housing Unit ("SHU") until he was transferred to another DOCS facility. Id. ¶¶ 91–92, 100. See generally, N.Y. Comp. Codes R. & Regs. tit. 7, ch. VI (2001) (SHU regulations).

Mr. Cancel appealed to defendant David Rock, Deputy Superintendent for Security, on February 6, and on February 8, defendant Daniel A. Rivers, a vocational supervisor, commenced Mr. Cancel's administrative segregation hearing. Am. Compl. ¶¶ 93, 97. Mr. Rivers ordered Mr. Cancel to remain in SHU "until transferred," to "preserv[e] safety and security in the facility." Id. ¶ 100. Mr. Cancel appealed this decision on the sole ground that his SHU confinement was in retaliation for his exercise of his constitutional rights. Id. ¶ 102. This appeal was successful, and, after Mr. Cancel was transferred from Franklin to the Wyoming Correctional Facility ("Wyoming"), he was returned to the general population. Id. ¶¶ 103–106, 110.[9]

### III. Collateral Estoppel

■■■ Mr. Cancel asserts that the "New York State Courts already decided

---

8. Mr. Cancel has voluntarily withdrawn his claims against Mr. Demars without prejudice. Pl.'s Opp. at 18 n.4.

9. Mr. Cancel also filed an inmate grievance arising out of the claimed retaliatory SHU confinement. Am. Compl. ¶ 109. This grievance was denied, and a subsequent appeal upheld that determination. Id. ¶¶ 109–110.

the religious issues presented herein against defendants [in the Article 78 proceeding], ... so defendants are estopped from defending those issues in this action." Pl.'s Mem. at 3. Pursuant to 28 U.S.C. § 1738, we must give the same preclusive effect to a state court judgment as it would be given by that state. *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir.1996). We therefore look to New York law to determine the effect of Mr. Cancel's successful Article 78 litigation: "Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue has necessarily been decided in the prior action and is decisive of the present action, and (2) there has been a full and fair opportunity to contest the decision now said to be controlling." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir.1996) (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969) and *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995)) (internal quotation marks omitted).

■ Mr. Cancel's Article 78 petition before the Dutchess County Supreme Court prayed that the Court would (1) overrule the decision denying the Fishkill Grievance; (2) order Commissioner Goord to "afford equal status and protection to all prisoners in the exercise of their religious beliefs"; and (3) order Commissioner Goord to "perform all the duties required of him by law" to protect Mr. Cancel's "religious rights." Durden Aff. Ex. A. The Supreme Court found that the record it was presented with at the outset of the litigation was "insufficient to permit [it] to determine whether the doctrinal and cultural distinctions between Sunni and Shi'a practices and beliefs warranted the relief

requested in the petition," and therefore "adjourned the proceeding to allow [Mr. Cancel] and [Commissioner Goord] to provide additional submissions, in appropriate affidavit form, on the issue of the cultural and doctrinal differences between Sunni Muslims and Shi'a Muslims." *Cancel*, 695 N.Y.S.2d at 268–69. In response, Mr. Cancel submitted two affidavits and five exhibits, while Commissioner Goord did not provide the Court with any additional submissions. *Id.* at 269.

The Supreme Court found that the denial of the grievance was "contrary to the objectives of DOCS Directive No. 4202 and the First Amendment right of religious liberty (U.S. Const. First Amend.) upon which it is based." *Id.* This judgment was affirmed, but on notably different grounds, and was modified as well. The Appellate Division's opinion does not rely upon, or even mention, the First Amendment of the United States Constitution.[10] *See Cancel*, 278 A.D.2d 321, 717 N.Y.S.2d 610. Rather, that Court rested its affirmance on New York Corrections Law § 610. *Id.* at 612 ("denial of the grievance was ... in violation of Corrections Law § 610").

■ As DOCS was given a full and fair opportunity to not only contest Mr. Cancel's Article 78 petition, but also to supplement the record before the Supreme Court, we find that preclusive effect should be given to those issues that were "necessarily decided" by the New York State courts. *Giakoumelos*, 88 F.3d at 59. We conclude, however, that there are only two issues that fall into this category. First, there is a finding of fact that there are "significant dogmatic differences" between the Shi'a and Sunni sects. *Cancel*, 717 N.Y.S.2d at 611. Second, there is a finding of law that DOCS's actions violated

10. Indeed, the sole mention of the United States Constitution in the Supreme Court's opinion is the one quoted in this paragraph, *supra.*

New York Corrections Law § 610. *Id.* at 612. Significantly, the state court decision did not reach any of the Federal Constitutional issues that we are asked to decide with respect to Mr. Cancel's § 1983 claim,[11] and, therefore, the state court decision has no preclusive effect on those issues.

## IV. Legal Principles

Before we consider the merits of defendants' motions to dismiss, we first set out several legal principles that are applicable to most or all of these motions.

### A. 42 U.S.C. § 1997e(e)

■ Defendants argue that 42 U.S.C. § 1997e(e), which reads, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," bars Mr. Cancel's § 1983 suit. It is certainly true that Mr. Cancel does not allege a physical injury. Nevertheless, it is equally true that he brought this action, *inter alia, for* alleged violations of his First Amendment rights, rather than *"for* mental or emotional injury." *Id.* (emphasis supplied). Accordingly, § 1997e(e) does not present an obstacle to the instant action. *See, e.g., Rowe v. Shake,* 196 F.3d 778, 781–82 (7th Cir.1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained."); *Amaker v. Haponik,* 1999 WL 76798, *6– *7 (S.D.N.Y. Feb.17, 1999).

### B. State Law Claims

■ Mr. Cancel's Amended Complaint includes claims brought under New York State law. New York Corrections Law § 24, however, reads in relevant part:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of [DOCS], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [DOCS]

---

11. "It settled law that the Federal Constitution, the New York State Constitution and the State Correction Law (§ 610) guarantee prisoners the right to free exercise of religion." *Abraham v. Sarkis,* 175 Misc.2d 433, 668 N.Y.S.2d 435, 440 (N.Y.Sup.1997). As the Appellate Division selected one of these sources of law to the exclusion of others, we can conclude that it rested its decision solely on § 610. Moreover, of the eight decisions cited by the Appellate Division in support of its ruling that DOCS violated § 610, only three are First Amendment cases. *See Matiyn,* 726 F.Supp. 42; *Smith v. Coughlin,* 577 F.Supp. 1055 (S.D.N.Y.1983); *Overton v. Coughlin,* 133 A.D.2d 744, 520 N.Y.S.2d 32 (2d Dep't 1987). The remainder either explicitly rely on the New York State law or are unclear as to the source of law underpinning

their decision. *See Muhammad v. New York City Dept. of Corr.,* 904 F.Supp. 161 (S.D.N.Y. 1995); *Matter of Lucas v. Scully,* 71 N.Y.2d 399, 526 N.Y.S.2d 927, 521 N.E.2d 1070 (1988); *Jackson v. Coughlin,* 204 A.D.2d 939, 612 N.Y.S.2d 89 (3d Dep't 1994); *Matter of 'Abdullah v. Coughlin,* 131 A.D.2d 471, 515 N.Y.S.2d 881 (2d Dep't 1987); *Matter of Thomas v. Lord,* 174 Misc.2d 461, 664 N.Y.S.2d 973 (N.Y.Sup.1997). Accordingly, we are convinced that the final New York State court decision did not reach the issue of whether, when, or by whom Mr. Cancel's First Amendment right to religious freedom was infringed. In any event, in light of our determination as to the sufficiency and/or insufficiency of the plead claims, the collateral estoppel issue does not loom so large as it did in the briefing of the present motions.

shall be brought and maintained in the court of claims as a claim against the state.

Upon taking pendent jurisdiction over Mr. Cancel's state claims, we are bound to apply state substantive law to those state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It is undisputed that all of the defendants' actions or omissions of which Mr. Cancel complains were "within the scope of [their] employment" with DOCS. N.Y. Correct. Law § 24; *see* Pl.'s Opp. at 1–4. Accordingly, because a New York State court (other than the Court of Claims) would dismiss Mr. Cancel's state law claims, we do so as well.[12] *Baker v. Coughlin,* 77 F.3d 12, 15–16 (2d Cir.1996).

### C. Qualified Immunity

■ All of the defendants assert, *inter alia,* the defense of qualified immunity. The Supreme Court has written that, where a "defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings ... [because] the privilege is an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz,* 533 U.S. 194, 199–201, 121 S.Ct. 2151, 2155–56, 150 L.Ed.2d 272 (2001) (emphasis in original) (internal quotation marks and citation omitted). Accordingly, the Second Circuit has held that a defendant should be shielded by qualified immunity at the motion to dismiss stage if, taking the allegations of the complaint as true, they "fail to state a claim that his conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Charles W. v. Maul,* 214 F.3d 350, 356–57

(2d Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ Thus, taking Mr. Cancel's factual allegations as true, we must first determine whether the facts alleged show that the relevant defendant's conduct violated a Federal Constitutional right of Mr. Cancel. If so, we must next decide whether the right that was violated was "clearly established" at the time of the relevant defendant's act or omission. *Saucier,* 533 U.S. at 200–01, 121 S.Ct. at 2156. To determine whether a right is "clearly established" in this sense, however, the right "must be defined at the appropriate level of specificity." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 200–01, 121 S.Ct. at 2156.

■ Of particular import to the case at bar is the well settled legal principle that "every religious sect or group within a prison [need not be afforded] identical facilities or personnel" in order to comply with the First Amendment. *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *see Matiyn v. Commissioner of Dept. of Corr.,* 726 F.Supp. 42, 43 (W.D.N.Y.1989) (dismissing complaint of Sunni Muslim inmate seeking Muslim religious services separate from Shi'ite inmates). Indeed, Mr. Cancel's Article 78 proceeding led to the first decision of which we are aware mandating that

---

**12.** While Mr. Cancel directs our attention to the Second Circuit's decisions in *Ierardi* and *Miller,* these cases are clearly distinguishable. *See Ierardi v. Sisco,* 119 F.3d 183 (2d Cir. 1997); *Miller v. Lovett,* 879 F.2d 1066 (2d Cir.1989). *Ierardi* concerned a state tort claim brought by one DOCS employee against another for alleged sexual harassment. Here, by contrast, we have the more common scenario where an inmate sues DOCS employees. *Miller,* moreover, does not even discuss N.Y. Correct. Law § 24.

Shi'ite prisoners be given separate accommodation from Sunnis. *See Cancel*, 717 N.Y.S.2d at 612. Hence, the rule announced in *Cancel* was certainly not well established at the time of the events litigated in that case.

## D. Personal Involvement

 Personal involvement by a named defendant is a "prerequisite to an award of damages under § 1983." *Colon*, 58 F.3d at 873. With respect to supervisory defendants, personal involvement

> may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.*

## E. Retaliation

 Many of Mr. Cancel's claims are for retaliation by DOCS employees in response to his exercise and enforcement of his Constitutional rights through the inmate grievance program and the judicial system. In this context, notice pleading is not adequate. Rather, "[t]o survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance *non-conclusory allegations* establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff,

and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001) (emphasis supplied). In the case at bar, the first and second prongs are not in significant dispute. The key question we must decide, rather, is whether Mr. Cancel's Amended Complaint sufficiently alleges a "causal connection between the protected speech and the adverse action." *Id.* This requires more than conclusory allegations. *See Colon*, 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care"); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983) ("a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone").

## V. Defendants

### A. The Imams

 Mr. Cancel alleges that Imam Umar, former [13] Ministerial Program Coordinator and Islamic Affairs Coordinator for DOCS, used his position to institute pervasive discrimination and persecution of Shi'ite inmates. Am. Compl. ¶ 36. He claims that Imam Umar hired only Sunnis (and no Shi'ites) to serve as imams at the various DOCS facilities, and directed these chaplains to deny non-Sunni Muslims the opportunity to "belong to, study, or discuss any form of Islam other than" Sunnism. *Id.* ¶¶ 37, 42. In evaluating Mr. Cancel's claims, it is important to distinguish between the assertion that Imam Umar hired only Sunnis and the assertion that he engaged in an active campaign of hostility

---

13. Imam Umar retired from DOCS in 2000.

toward Shi'ites. The former, by itself, would not at that time have risen to a Constitutional claim. *See, e.g., Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir.1987); *Gittlemacker v. Prasse,* 428 F.2d 1, 4 (3d Cir.1970). The latter, however, does state a Constitutional claim. *See, e.g., Cruz,* 405 U.S. at 322 n. 2, 92 S.Ct. 1079 ("reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment"). Accordingly, we decline to grant qualified immunity to Imam Umar at this stage in the proceedings, and deny his motion to dismiss the claims against him.

■ Mr. Cancel claims that Imam At–Tayeb disallowed certain guest speakers from entering Franklin on the ground that they were Shi'a. He also claims that Imam At–Tayeb showed other Muslim inmates a copy of the Fishkill Grievance, told them that Mr. Cancel was an evil person who wanted to divide the Muslim community, and that Shi'a are taught to hate Sunnis. Am. Compl. ¶¶ 81–83; *see also* Part II, *supra.* Moreover, Mr. Cancel claims that Imam At–Tayeb retaliated against him by having Mr. Cancel confined to SHU because he had been exercising and enforcing his First Amendment rights. Thus, if we assume, as we must, that the factual allegations in the Amended Complaint are true, Mr. Cancel states a retaliatory First Amendment claim against Imam At–Tayeb. The sufficiency of Mr. Cancel's claims with respect to the disallowance of guest speakers and the alleged disparagement, cf. *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002), must await further fac-

tual development. Hence, we decline to grant Imam At–Tayeb qualified immunity at this stage in the proceedings, and deny his motion to dismiss.[14]

## B. Ada Perez, Anthony Annucci

■ On April 27, 1998, Mr. Cancel sent a complaint to Ms. Perez, the Deputy Superintendent for Programs at Fishkill, describing the alleged religious discrimination that he and his fellow Shi'a inmates suffered at the hands of Imam Muhammad. Am. Compl. ¶ 43; Pl.'s Mem. Exs. at 7–8. A few days later, another Shi'a inmate wrote to Ms. Perez, requesting permission to celebrate a Shi'a holiday in a meeting room without the presence of Imam Muhammad. Am. Compl. ¶ 43; Pl.'s Mem. Exs. at 9. Mr. Cancel claims that Ms. Perez "failed to take any corrective measures," and denied the request for a separate Shi'a service. Am. Compl. ¶ 44. Further, he claims that Ms. Perez forwarded this correspondence to defendant Anthony Annucci, who also took no action.

Mr. Cancel fails to state a § 1983 claim against Ms. Perez as there is no suggestion that she was doing anything other than following DOCS's longstanding policy of treating all Muslims as a single group. *See, e.g., Matiyn,* 726 F.Supp. at 43. Indeed, her forwarding of the correspondent to Mr. Annucci, the general counsel of DOCS, is a contemporaneous recognition of the systemic, rather than local, nature of the issue. Nevertheless, the mere receipt of Mr. Cancel's correspondence, without some showing of a duty to act, is insufficient to satisfy the "personal involve-

---

**14.** Mr. Cancel makes the blanket assertion that all defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. §§ 1985(3) and 1986. Am. Compl. Preliminary Statement. We find that he states a § 1985(3) claim against Imams Umar and At–Tayeb in that he claims that they instituted a policy or practice of depriving Shi'a inmates of their Constitutional rights. Am. Compl. ¶ 36. As we dismiss all the other defendants, however, we likewise dismiss Mr. Cancel's § 1986 "neglect to prevent" claim because the only remaining defendants are accused of being direct participants in the alleged conspiracy.

ment" requirement of a § 1983 suit. *Colon*, 58 F.3d at 873; *Laureano v. Pataki*, 2000 WL 1458807, at *4 (S.D.N.Y. Sept.29, 2000); *Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995). Accordingly, we dismiss the claims described in the preceding paragraph against Ms. Perez and Mr. Annucci.

### C. Chris Degon

 The only allegation Mr. Cancel makes involving Mr. Degon is that the latter prevented him, on one occasion, from attending a religious service. Am. Compl. ¶ 113. Even assuming Mr. Cancel's allegations to be true, this does not state a claim for a violation of his First Amendment religious rights, as "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion." *Gill v. Defrank*, 2000 WL 897152, at *2 (S.D.N.Y. July 6, 2000), *aff'd*, 8 Fed. Appx. 35, 2001 WL 388057 (2d Cir.2001). We grant Mr. Degon's motion and hereby dismiss any and all of Mr. Cancel's claims against him.

### D. Central Office Review Committee

 Mr. Cancel claims that the individual members of CORC violated his religious rights under the First Amendment in denying the Fishkill Grievance. He apparently seeks to hold them liable for failing take action to correct the allegedly unconstitutional behavior by the Muslim Imams at Fishkill.

 We observe first that at the time of its decision, CORC was entirely correct when it noted that the First Amendment does not require that each sect in a prison be given its own facilities and personnel.

*See Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. 1079. Moreover, we find that CORC reasonably relied on the opinion of Imam Umar, the former head of Ministerial Service for DOCS, in determining that all Muslim religious groups, including Shi'a and Sunni, "practice the same faith and should not be separated." [15] Pl.'s Mem. Exs. at 25. Imam Umar was the senior Muslim affiliated official who had been hired by DOCS to advise it concerning the spiritual needs of its Muslim inmates. We decline, after DOCS has hired an Islamic specialist and relied on his opinion on Islamic matters in its prisons, to hold the individual members of CORC personally liable for doing so.

### E. Stephen Bernardi, Charlie Harvey, and Donna Masterson

 Mr. Cancel claims that the Fishkill inmate grievance supervisor forwarded a copy of his grievance appeal to Mr. Bernardi, Mr. Harvey, and Ms. Masterson, all employees of the "DOCS office of diversity management," but that they permitted the allegedly unlawful conduct alleged therein to continue. Am. Compl. ¶ 50. The mere receipt of the Fishkill Grievance, without some showing of a duty to act, is insufficient to satisfy the "personal involvement" requirement of a § 1983 suit. *Colon*, 58 F.3d at 873; *Laureano*, 2000 WL 1458807, at *4; *Greenwaldt*, 1995 WL 232736, at *4. Accordingly, we grant their motions and dismiss all of Mr. Cancel's claims against defendants Bernardi, Harvey, and Masterson.

### F. Glenn S. Goord

 Mr. Cancel claims that, upon being served with the complaint in his Article

---

15. While the state courts that adjudicated Mr. Cancel's Article 78 proceeding made much of the fact that Imam Umar's opinion was "potentially biased," *Cancel*, 717 N.Y.S.2d at 612, this fact is more relevant to a due process violation than an infringement on Mr. Cancel's First Amendment rights. "Mr. Cancel[, however,] has not claimed a due process violation." Pl.'s Opp. at 13.

78 proceeding, Mr. Goord, the Commissioner of DOCS, "should have taken the necessary corrective measures; however, he failed to act, with [an] improper motive and intent." Am. Compl. ¶ 55. Mr. Cancel fails to consider that Mr. Goord as Commissioner of DOCS was entitled, once the case was in litigation, ·to await the State Court's resolution of the controversy. We therefore grant Commissioner Goord's motion and dismiss all of Mr. Cancel's claims against him.

### G. W. Gonzalez

 Mr. Cancel alleges that on July 9, 1998, his "grievance file" was forwarded to defendant W. Gonzalez, a deputy counsel of DOCS, who took no action. These allegations, without more, also fail to satisfy the "personal involvement" requirement of a § 1983 suit. *Colon,* 58 F.3d at 873; *Laureano,* 2000 WL 1458807, at *4.

### H. Law Library Retaliation

 Mr. Cancel claims that he worked at the Fishkill Law Library, which was run by defendants Ada Perez and Patrick Perry, the Coordinator of the Program Committee at Fishkill. Am. Compl. ¶ 69. On or about February 28, 2000, according to Mr. Cancel, "the Law Library officer [16] decided to promote [him] to the position of bilingual paralegal," a position Mr. Cancel accepted. *Id.* ¶ 70. Ms. Manning asked Mr. Cancel to draft a letter expressing his acceptance of the position to be delivered to Ms. Perez and Mr. Perry. *Id.* ¶ 71. Ms. Perez and Mr. Perry denied the promotion on the basis of what Mr. Cancel claims was "a clearly bogus excuse." *Id.* ¶ 72. Mr. Cancel re-wrote his acceptance letter, but this version was likewise rejected. *Id.* ¶¶ 72–73. Ms. Manning allegedly told Mr. Cancel, " 'this has never happened to me with other requests in the past.

They must not like you.' " *Id.* ¶ 73. Mr. Cancel has since concluded that Ms. Perez and Mr. Perry denied his promotion as retaliation for his success in his Article 78 proceeding. *Id.* ¶ 74. Accordingly, he included this incident in a grievance he filed on April 10, 2000, after the Supreme Court had ruled on his Article 78 petition, but before the Appellate Division had done so. *Id.* ¶ 75; *see* Pl.'s Mem. Exs. at 30–34. This grievance was denied by defendant William Mazzuca, Fishkill's Superintendent, on the basis of a report from Ms. Perez. Am. Compl. ¶ 75. Mr. Cancel appealed this denial to CORC, which affirmed Mr. Mazzuca's determination. *Id.* ¶ 76. Mr. Cancel alleges First Amendment retaliation claims against Ms. Perez, Mr. Perry, and Mr. Mazzucca, as well as the individual members of CORC, Jason Efman, R. Snyder, Anthony Sumigray, Cathy Kennan, Steven Vanburen, and Robert Raymond. *Id.*

As we noted above, *see* Part IV.E, *supra,* to avoid dismissal, Mr. Cancel must advance *"non-conclusory allegations* establishing[, inter alia,] that there was a causal connection between the protected speech and the adverse action." *Dawes,* 239 F.3d at 492 (emphasis supplied). The Amended Complaint, however, provides nothing more than conclusory allegations with respect to the causal connection between the filing of his Article 78 petition and the denial of his library promotion.

Mr. Cancel filed his Article 78 petition more than two and one-half years before he was denied the promotion, and the Supreme Court issued its decision more than six months before that time. *Compare Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002) (time frame of three weeks between filing of grievance and alleged retaliation sufficient for prima facie showing of

---

**16.** Later identified as "Ms. C. Manning." Pl.'s Opp. at 12.

causation). Furthermore, his claim of retaliation is undermined by his acknowledgment in his Amended Complaint that he received promotions at the library during the pendency of his Article 78 proceeding. Am. Compl. ¶ 69. Accordingly, he fails to state a retaliation claim against Ms. Perez and Mr. Perry, and we dismiss those claims against them.

█ As for Mr. Mazzuca, the same analysis applies with respect to the causality prong of a retaliation claim. Moreover, an examination of Superintendent Mazzuca's ruling on Mr. Cancel's grievance establishes that he conducted a serious investigation of Mr. Cancel's claims and learned that Mr. Perry had informed Mr. Cancel that he would be considered for a library position when one came available. We therefore dismiss Mr. Cancel's retaliation claim against Mr. Mazzuca. CORC's affirmance of Mr. Mazzuca's decision, without more, is an insufficient basis for a retaliation claim and, accordingly, plaintiff's claims against Mr. Efman, Mr. Snyder, Mr. Sumigray, Ms. Kennan, Mr. Vanburen, and Mr. Raymond are dismissed.

### I. Post–Supreme Court Grievance

█ As part of the grievance discussed in Part V.H, *supra*, which Mr. Cancel filed after the Supreme Court ruled, but before the Appellate Division did so, he asserted that he had been the subject of discrimination because certain Shiʻa volunteers had been denied access to Fishkill. Am. Compl. ¶¶ 58–60. Mr. Mazzuca denied this grievance based on a report from Ms. Perez that DOCS had determined that it would continue to offer a "singular Muslim program/service" for Sunni and Shiʻa inmates until the Article 78 litigation had been resolved.[17] Pl.'s Mem. Exs. at 33. This decision was affirmed by CORC. In addition, Frank Headley, who had been sent a copy of Mr. Cancel's April 10, 2000, grievance, replied to Mr. Cancel, stating, "The need for religious classes and congregate services separate from the existing Islamic program provided by Islamic chaplains will be determined by Islamic authorities." *Id.* at 36.

None of these actions or omissions constitute a Constitutional violation. DOCS's employees were entitled to let the legal process run its course. Also, it must be remembered that the Appellate Division reversed the Supreme Court's specific directives and remanded the case to DOCS to "conduct administrative proceedings ... to determine the manner in which to best [accommodate the religious needs of Shiʻa inmates] in a time and place that comport with legitimate penological concerns."[18] *Cancel,* 717 N.Y.S.2d at 612. Accordingly, neither denial of his grievance, affirmance of that denial, nor Mr. Headley's letter constituted a "substantial burden" on Mr. Cancel's First Amendment rights. Accordingly, we dismiss the remainder of Mr. Cancel's claims against Ms. Perez, Mr. Mazzuca, Mr. Efman, Mr. Snyder, Mr.

---

17. In his decision denying Mr. Cancel's grievance, Mr. Mazzuca states that the Supreme Court's decision in the Article 78 proceeding "is in abeyance." Pl.'s Mem. Exs. at 33. We read this to indicate that DOCS was relieved of its obligation to comply with the portion of the Supreme Court's decision that was eventually reversed until the Appellate Division issued its decision, perhaps due to a temporary stay order. Mr. Cancel's submissions do not refute this supposition.

18. We note that DOCS has since complied with the Appellate Division's order and created a policy based largely on Mr. Cancel's requests. Durden Aff. Ex. D; *see also Pugh,* 184 F.Supp.2d at 337 (finding that DOCS's new policy is constitutionally sufficient to accommodate the religious needs of Shiʻite inmates).

Sumigray, Ms. Kennan, Mr. Vanburen, and Mr. Raymond.

### J. The At–Tayeb Grievance and Subsequent Retaliation

██ Mr. Cancel filed the At–Tayeb Grievance on January 4, 2001. *See* Part V.A., *supra.* This grievance was denied by defendant Roy Girdich, Franklin's superintendent, because "there was some miscommunication [between Imam At–Tayeb and Mr. Cancel] which resulted in confusion regarding the proposed visit [of outside Shi'a volunteers]." Durden Aff. Ex. G; *see* Am. Compl. ¶ 86. Mr. Girdich's decision was subsequently upheld by unknown defendants named as "John/Jane Doe(s)" for the reasons stated by Mr. Girdich.

An hour after receiving Mr. Girdich's decision, Mr. Cancel claims that Lt. W. St. Dennis "advised [Mr. Cancel] that based on a statement provided by defendant [Imam] At–Tayeb, it was 'determined that you [Mr. Cancel] have been trying to undermine the [M]uslim community,' " and that he had "already determined that [Mr. Cancel] should be confined to administrative segregation at the Special Housing Unit ('SHU')." Am. Compl. ¶¶ 89, 91. Mr. Cancel "appealed" his SHU confinement as retaliatory to defendant David Rock, the Deputy Superintendent for Security, who then assigned defendant Corrections Officer W.G. Boulerice, to handle the matter. *Id.* ¶¶ 93–94. Mr. Boulerice did not reverse the decision to confine Mr. Cancel in SHU. *Id.* ¶¶ 95–96. On February 8, 2001, defendant Daniel A. Rivers, a vocational supervisor, commenced Mr. Cancel's administrative segregation hearing, where Mr. Cancel told Mr. Rivers

that, in his opinion, he was being unconstitutionally confined in SHU as retaliation for his attempts at "seeking religious freedom" through the inmate grievance procedure and the courts. *Id.* ¶¶ 97–98. Mr. Rivers ordered Mr. Cancel to remain in SHU " 'until transferred' " in order to " 'preserv[e] safety and security in the facility.' " *Id.* ¶ 100. Mr. Cancel was subsequently transferred. Mr. Cancel grieved the allegedly retaliatory SHU confinement and transfer, but Mr. Sears, the Deputy Superintendent, denied the grievance. *Id.* ¶ 109.

██ While Mr. Cancel states a claim for unconstitutional retaliation against Imam At–Tayeb,[19] he fails to do so with respect to the other defendants involved in this incident.[20] Mr. Girdich was entitled to believe a DOCS employee who claims that there was a mere misunderstanding, rather than a malicious attempt to deprive Mr. Cancel of Shi'a volunteers. Further, the mere claim that Mr. St. Dennis, Mr. Girdich, Mr. Sears, Mr. Rock, and Mr. Boulerice believed Imam At–Tayeb's representations that Mr. Cancel was a threat to the safety and security of the facility, and therefore placed him in SHU, does not suffice to state a claim for retaliation. Prison officials are afforded great latitude in running their facilities, *see Turner,* 482 U.S. at 89, 107 S.Ct. 2254, and the federal courts should not lightly infer that any adverse action taken against a prisoner is retaliatory. Even assuming all of the factual allegations[21] in the Amended Complaint are true, Mr. St. Dennis, Mr. Girdich, Mr. Sears, Mr. Rock, and Mr. Boulerice are shielded by qualified immunity, because they acted reasonably in believing Imam At–Tayeb's claims that Mr. Cancel

---

**19.** See Part V.A, *supra.*

**20.** Mr. Cancel notably disclaims any due process claims. *See* note 15, *supra.*

**21.** Declarations of the state of mind of a defendant, such as "with the improper motive and intent," are of no consequence to this inquiry. *E.g.,* Am. Compl. ¶ 38.

was too dangerous to remain in the general population. Accordingly, we dismiss all of Mr. Cancel's claims against them.

## VI. Venue

On behalf of defendants located in Albany and at Franklin, the Attorney General of the State of New York has moved to transfer this case against any non-dismissed defendant to the Northern District of New York pursuant to 28 U.S.C. § 1404(a). Following our rulings, only one defendant from this group remains, Imam At–Tayeb. No venue transfer motion has been made on behalf of the other remaining defendant, Imam Umar. Thus, if we were to grant the motion, Mr. Cancel would be forced to proceed in two fora, a result more onerous on him than the burdens imposed on Imam At–Tayeb, who is represented by the Attorney General—and who, as a government employee, will not incur any personal expenses in connection with this litigation.

Indeed, defendants recognize that this split trial result is problematic when they cite *Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998). However, if Imam Umar were to join in the motion to transfer, our resolution of such a motion might well be different. For now, however, the motion to transfer venue is denied.

## CONCLUSION

For the reasons set forth above, we dismiss all of Mr. Cancel's claims against all defendants except for Imam Umar and Imam At–Tayeb. Furthermore, we dismiss those claims founded on state law against these remaining defendants.

**IT IS SO ORDERED.**