278 F.3d 126
 Daniel MORALES, Plaintiff-Appellant,
v.
Dr. MACKALM, (sic), Woodbourne Correctional Facility; Dr. Lancellotti, Woodbourne Correctional Facility; T. Miller, Acting Superintendent, Woodbourne Correctional Facility; R. Williams, Mrs., Head Nurse, Woodbourne Correctional Facility; J. Hopkins, C.O.; A. Sicina, C.O.; Sergeant Porter; W. Vera, C.O.; G. Doyle, C.O.; T. Hopkin, C.O.; P. Eggelton, C.O.; T. Chahon, C.O.; Ms. Mentneck, Hospital Clerk, Woodbourne Correctional Facility; Dr. Nison, Marcy Correctional Facility; Dr. Debroize, Marcy Correctional Facility; Dr. Goyal, Marcy Correctional Facility; Ruthie Gilbert, Head Nurse, Marcy Correctional Facility; D. Began, C.O., Marcy Correctional Facility; M. Faroni, C.O., A. Townsend, C.O., Marcy Correctional Facility; Dr. Rudder, Psychiatrist, Sullivan Correctional Facility; W. Sidorowiez, Dr., Sullivan Correctional Facility; C. Cruz, Ms., Nurse and Clerk, Sullivan Correctional Facility; Nurse Sweeny; John Doe # 1; Jane Doe 2; Jane Doe # 4; Jane Doe # 3, Defendants-Appellees.
 Docket No. 00-0113.
 United States Court of Appeals, Second Circuit.
 Argued September 10, 2001.
 Decided January 28, 2002.
 
 COPYRIGHT MATERIAL OMITTED Norman A. Pattis, Williams and Pattis, LLC, New Haven, CT, for Plaintiff-Appellant.
 David Lawrence, III, Assistant Solicitor General, State of New York, New York, NY (Michael S. Belohlavek, Deputy Solicitor General; Marion R. Buchbinder, Assistant Solicitor General, Eliot Spitzer, Attorney General of the State of New York, New York, NY, on the brief), for Defendants-Appellants.
 Before: CARDAMONE, McLAUGHLIN, and POOLER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Daniel Morales appeals from a judgment entered in the United States District Court for the Southern District of New York (Rakoff, J.) that dismissed his civil rights complaint with prejudice. Morales alleged that various personnel at the three correctional facilities in which he lived in 1996 and 1997 were deliberately indifferent to his serious medical needs, sexually harassed him, discriminated against him on the basis of his race, and retaliated against him because he filed a grievance. We agree with the district court that Morales' complaint does not state a claim for medical indifference but remand to allow him an opportunity to file an amended complaint. We also find that Morales failed to state a claim for sexual harassment or race discrimination and therefore affirm the dismissal of these two claim. The district court dismissed Morales' retaliation claim for failure to exhaust remedies available within the prison system before we held in Lawrence v. Goord, 238 F.3d 182 (2d Cir. 2001) (per curiam), that the exhaustion requirements of the Prison Litigation Reform Act ("PLRA") do not apply to retaliation claims.[1] In light of Lawrence and because Morales' retaliation claim, liberally construed, states a claim upon which relief can be granted, we vacate the district court's judgment insofar as it dismissed the retaliation claim and remand for further proceedings. We also clarify that if a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice.
 
 BACKGROUND
 
 2
 Because our review focuses primarily on the adequacy of Morales' complaint, we will set out in some detail the complaint's allegations. Since July 1994, Morales has been in the custody of the New York State Department of Correctional Services ("DOCS"). Before Morales began serving his sentence with DOCS, he was in the custody of the New York City Department of Corrections. During that incarceration, medical personnel sent Morales for x-rays to determine whether he had a peptic ulcer. Although Morales never learned what the x-rays showed, he was given Maalox and Zantac for his stomach problems.
 
 
 3
 From May 1, 1996 until mid-August 1997, Morales complained regularly to the staff of the Woodbourne Correctional Facility ("Woodbourne"), where he was incarcerated, "about his problems of constant body aches, dry throat, constant urination and severe body attacks (which cause his body to twist to [the] left side), dizziness," eye irritation, fogging of his eyes, and stomach problems.
 
 
 4
 Although Dr. Mackalm and Dr. Lancellotti, who are defendants in this lawsuit, treated Morales while he was at Woodbourne, they "deliberately refused to treat" his "medical condition and left him suffer[]ing physically with the same symptoms." Medical personnel, who are not identified in the complaint, "would not find the cause of [Morales'] illness or a suitable remedy to eliminate the pain he was experiencing." In addition, certain defendants "repeatedly thwarted plaintiff['s] access to medical treatment by delaying his schedule[d] appointments and denying him access to medical doctors on several occasions, out of spite, because he repeatedly sought medical attention." Although Morales complained in writing to Acting Superintendent Miller, Miller did not take any effective steps to remedy the problem. Morales also filed institutional grievances.
 
 
 5
 On August 2, 1997, defendant Mentneck, together with three Jane Doe defendants, formed a mental health group. Morales claims that during one of the group sessions, Mentneck and the three Jane Does verbally and sexually harassed him because of his race. In particular, Mentneck repeatedly demanded that Morales have sex with her and that he masturbate in front of her and the other women. On August 4, 1997, Morales filed an institutional grievance concerning the incident. After Mentneck was interviewed in connection with the grievance she "yelled out loud that [Morales] was a `stoolie' while other inmates, working near[by] could hear her, [thus] stig[mat]izing plaintiff as a rat in an attempt to have him hurt by other inmates." Other defendants called plaintiff a "`rat bastard' and a `bugged-out mother fucker' in [the presence] of other inmates." Shortly thereafter, certain of the defendants including Mentneck confined Morales to the Mental Health Unit at Woodburne. On August 26, 1997, the same defendants caused Morales' transfer to the Sullivan Correctional Facility Mental Health Unit. On September 4, 1997, he was moved to the Central New York Psychiatric Center. Morales claims that the same defendants were responsible for this transfer and that, in each instance, the defendants acted from a desire to retaliate against him for filing grievances and seeking adequate medical care.
 
 
 6
 During the two months that Morales was at the Central New York Psychiatric Center, medical personnel failed to provide him with adequate medical care for his previously described symptoms despite the fact that he went to sick-call every day for a month "complaining of severe ab[d]ominal pain, dizziness, constant urination, body attacks, [and] fogged-eyes." Other defendants "repeatedly attempted to and did interfer[e] with plaintiff['s] attempts to ob[ta]in medical care by saying to the doc[t]ors that nothing was wrong with plaintiff, delaying access to doctors and denying him access on some days." On one occasion, defendant Dr. Nisson attempted to tube feed Morales, but, because she lacked the necessary skill, injured him.
 
 
 7
 On November 12, 1997, Morales returned to the psychiatric facility at Sullivan Correctional Facility. Medical personnel there again "denied [Morales] adequate medical care and tried to convince [him] that nothing was wrong with him."
 
 
 8
 Morales contends that defendants "deliberately failed to provide him with adequate medical care regarding his serious medical needs relating to blood sugar reactions and treatment therefore, and provided an inadequate medical diet to control the reactions he was experiencing," thus aggravating his medical condition. He also claims that certain of the defendants — including Mentneck — intentionally retaliated against him for seeking adequate medical care and using the inmate grievance system by placing him in psychiatric facilities and calling him a "stoolie" in front of other inmates. Finally he argues that Mentneck and others violated the Eighth Amendment by demanding that Morales perform sexual acts and retaliating against him when he complained.
 
 
 9
 Defendants moved to dismiss Morales' complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on Morales' failure to exhaust his administrative remedies, defendant Miller's lack of personal involvement, the Eleventh Amendment, and Morales' failure to state a claim upon which relief could be granted. Although Magistrate Judge Naomi Reice Buchwald granted Morales two long extensions to reply to defendants' motion, he failed to do so, and on July 1, 1999, the magistrate judge issued a report-recommendation that recommended that the district court dismiss his complaint for failure to exhaust administrative remedies. Subsequent to her report-recommendation, Judge Buchwald received a reply including documents that the state had not submitted and that indicated Morales might have exhausted his administrative remedies with respect to certain incidents he described in his complaint. On July 30, 1999, because both defendants and plaintiff had submitted documents not contained in the pleadings on the exhaustion issue, Judge Buchwald sent Morales a notice informing him that she would treat the motion to dismiss as a summary judgment motion on the exhaustion issue and that he should submit any additional documents that would indicate other fully exhausted grievances by August 9, 1999. She had received no such documents as of August 31, 1999, when she issued a supplemental report-recommendation in which she recommended that the district court dismiss Morales' medical indifference claim for failure to state a claim and grant summary judgment dismissing his remaining claims because he failed to exhaust administrative remedies. Morales did not file any objections, and, on September 24, 1999, Judge Jed S. Rakoff adopted the report-recommendation and dismissed Morales' complaint with prejudice. Although the district court granted Morales' subsequent request to file objections out-of-time, it then rejected those objections as lacking merit and again ordered dismissal of his lawsuit with prejudice.
 
 
 10
 Morales appealed, arguing principally that the PLRA administrative exhaustion requirement does not apply to his sexual harassment, retaliation, and medical indifference claims and that he stated a claim upon which relief can be granted with respect to each of these claims. He concedes that he did not make actionable allegations of race discrimination. Although defendants acknowledge that Lawrence precludes us from affirming the district court's judgment because Morales failed to exhaust administrative remedies for his retaliation claim, they preserve this argument for en banc or Supreme Court review. Defendants also contend that none of Morales' causes of action states a claim upon which relief can be granted and that he was required to — and did not — exhaust his administrative remedies for his sexual harassment claim and a portion of his medical indifference claim.
 
 DISCUSSION
 I. Dismissal With Prejudice
 
 11
 Although the district court adopted the report-recommendation, which recommended dismissal on the basis of plaintiff's failure to exhaust available administrative remedies except as to the medical indifference claim, it dismissed all of his claims with prejudice. This was error. Failure to exhaust administrative remedies precludes only the current lawsuit, see 42 U.S.C. § 1997e(a). Therefore, the dismissal of claims for failure to exhaust should be without prejudice. See Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir.2001) (holding that district court "correctly dismissed [an unexhausted] count ... without prejudice").
 
 II. Retaliation
 
 12
 Although defendants acknowledge that we cannot affirm the district court's dismissal of Morales' retaliation claim based on his failure to exhaust administrative remedies, they urge that we affirm on the alternative basis of failure to state a claim. In order to do so, we must find that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Because Morales' complaint alleges civil rights violations and he proceeded pro se in the district court, we must construe his complaint with particular generosity. Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir.1999)
 
 
 13
 In order to state an actionable claim for retaliation, Morales "must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir.2001). Morales clearly satisfies the first test because filing a grievance is protected activity. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir.1996).
 
 
 14
 Plaintiff also states a prima facie case on the third element, causation. He alleges that he filed his grievance on August 4, 1997, the grievance committee subsequently interviewed Mentneck, and sometime before August 26, 1997, certain individual defendants including Mentneck placed Morales in Woodbourne's psychiatric unit and then had him transferred first to Sullivan Correctional Facility Mental Health Unit and then to the Central New York Psychiatric Center.[2] Mentneck's alleged involvement in the decision to transfer Morales coupled with the short time frame between the grievance and the transfer supports an inference that defendants had a retaliatory motive. Cf. Dawes, 239 F.3d at 492 (plaintiff's "failure to set forth a time frame for the alleged events ... precludes inference of a causal relationship").
 
 
 15
 The only remaining question is whether Morales adequately alleges that defendants subjected him to an adverse action. To adequately plead an adverse action, a plaintiff must allege that defendants subjected him to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Id. at 493. This test is not satisfied by Morales' allegation that Mentneck called him a stoolie in front of other inmates. Id. at 492 (telling other inmates that plaintiff was an informant does not constitute a sufficiently adverse action). However, at this early stage, the allegation that defendants transferred Morales to a psychiatric facility must be construed as describing an adverse action. Morales should have the opportunity to develop facts that would demonstrate that the prospect of confinement in a psychiatric facility would deter a reasonable inmate from pursuing grievances. Cf. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir.2000) (indicating that placement in administrative segregation could be an adverse action); Sealey v. Giltner, 116 F.3d 47, 52 (2d Cir. 1997) (emphasizing "desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement").
 
 
 16
 We therefore vacate that portion of the district court's judgment that dismissed plaintiff's claim that defendants Mentneck and others retaliated against him for filing a grievance by placing him in Woodbourne's psychiatric unit, the Sullivan Correctional Facility's psychiatric unit, and the Central New York Psychiatric Center.
 
 III. Sexual Harassment
 
 17
 Defendants argue that we should not extend Lawrence and Nussle v. Willette, 224 F.3d 95 (2d Cir.2000) (holding that exhaustion is not required for an excessive force claim), cert. granted, 532 U.S. 1065, 121 S.Ct. 2213, 150 L.Ed.2d 207 (2001), to the sexual harassment context.[3] We see no need to address this issue because Morales' complaint does not state a claim for sexual harassment. See 42 U.S.C. § 1997e(c)(2). He alleges only that Mentneck asked him to have sex with her and to masturbate in front of her and other female staffers. In Boddie v. Schnieder, this court dismissed as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis. 105 F.3d 857, 859-861 (2d Cir.1997). Because Morales' allegations do not even rise to the level of those made by the plaintiff in Boddie, they do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution.
 
 IV. Medical Indifference
 
 18
 To state an Eighth Amendment claim for medical indifference, Morales must first allege a sufficiently serious deprivation that is, "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (internal quotation marks omitted). Next, he must show that the defendant had a sufficiently culpable frame of mind, which is defined as "more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. This state of mind requires that the prison employee know facts "from which the inference could be drawn that a substantial risk of serious harm exists," and that he, in fact, draw that inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The serious medical deprivation and state of mind tests apply both to delayed or denied access claims and to inadequate medical care claims. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998) (inadequate medical care); Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir.1994) (denial and delay of care). Morales arguably pleaded facts sufficient to show a serious deprivation by alleging that he suffered constant, unremediated pain. However, the allegations of his complaint do not suggest adequately that defendants knew facts from which they could infer that absent further treatment or more prompt treatment, Morales faced serious harm. Because Morales' allegation that he constantly complained of pain and other objectively unverifiable symptoms lacks any further factual context, e.g. dates of complaints and dates of treatment, descriptions of objectively observable symptoms, or results of diagnostic tests administered to him, they do not supply a basis for concluding that the defendants knew facts that would have alerted them to Morales' need for treatment. Cf. McElligott v. Foley, 182 F.3d 1248, 1252-56 (11th Cir.1999) (holding that there was sufficient evidence to defeat a summary judgment motion on medical indifference where, among other things, prisoner frequently complained to prison employees of severe pain, prison employees observed him vomiting, and medical personnel noted that he had lost a significant amount of weight and "could not even tolerate liquids"). Nevertheless, "we cannot rule out the possibility that ... amendment [by this pro se plaintiff] will result in a claim being successfully pleaded" and therefore vacate the district court's dismissal of Morales' deliberate indifference claim in order that plaintiff may amend his complaint and the district court determine whether the amended complaint states a claim.[4] Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) (per curiam).
 
 
 19
 Defendants also urge that we should affirm the district court's dismissal of Morales' medical indifference claims against the defendants employed by the Central New York Psychiatric Center because Morales did not exhaust his administrative remedies for these claims. We believe it appropriate that the district court determine in the first instance after Morales files his amended complaint whether his failure to exhaust requires dismissal of his medical indifference claims. See Neal v. Goord, 267 F.3d 116, 119-20 (2d Cir.2001) (discussing circumstances under which a medical indifference claim must be exhausted).
 
 CONCLUSION
 
 20
 For the reasons discussed, we affirm the district court's judgment except insofar as it dismissed Morales' claims that (1) defendants Mentneck, John Doe # 1, T. Hopkins, Vera, Doyle, Eggelton, Chahon, Sweeny, and Williams retaliated against him for lodging a grievance against Mentneck by transferring him to various mental health prison facilities and (2) several of the defendants violated the Eighth Amendment through deliberate indifference to his serious medical needs. We vacate those portions of the judgment and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The exhaustion requirement is set forth in 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
 
 
 [2]
 We agree with defendants that Morales failed to allege that any of the defendants were involved in his November 1997 return to the Sullivan Correctional Facility
 
 
 [3]
 In addition to arguing that exhaustion was not required for his sexual harassment and medical indifference claims because they involved actions of the defendants that applied only to him as opposed to prison conditions, Morales also argues that the unavailability of damages through the prison grievance system makes the exhaustion requirement inapplicable. The Supreme Court foreclosed the latter argument inBooth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).
 
 
 [4]
 We note that Morales' allegation that Dr. Nisson injured him by attempting to insert a feeding tube because she lacked the requisite skill does not state a claim for medical indifference because it alleges mere negligenceSee Hathaway, 37 F.3d at 66.