Francis AULETA, Sr. Plaintiff,

v.

LAFRANCE, Sgt., Defendant.

No. 01–CV–431 (LEK/DRH).

United States District Court,
N.D. New York.

Nov. 20, 2002.

Francis Auleta, Sr., Dannemora, NY, for
Plaintiff.

Krista A. Zinser, New York State Attorney General, Albany, NY, for Defendant.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

#### Background

Plaintiff Francis Auleta, Sr. ("Plaintiff"), an inmate in the custody of the New York Department of Correctional Services ("DOCS") filed a *pro se* complaint under 29 U.S.C. § 1983, alleging that Defendant LaFrance ("Defendant") violated Plaintiff's procedural due process rights and took retaliatory action against Plaintiff. Plaintiff was assigned to work as an inmate legal assistant at Upstate Correctional Facility ("Upstate"). Plaintiff alleges that, while performing his assigned prison job and after having received permission from prison officials, he helped another inmate named Rivera with the filing of an appeal from a decision that was rendered on a grievance that had been submitted by Rivera. (Compl.¶¶ 7–8.) Plaintiff claims that Defendant later placed Plaintiff in "keeplock" [1] for 7½ days without due process to retaliate against him for assisting Rivera with the appeal. (*Id.* at ¶ 11.)

Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6). On September 24, 2002, the Honorable David R. Homer, United States Magistrate Judge, issued a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York recommending that Defendant's motion to dismiss be granted. After ten days from the service thereof, the Clerk sent the entire file to the undersigned, including the objections by Plaintiff, which were filed on October 9, 2002.

#### Discussion

#### I. Standard of Review

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

#### II. Standard for Motion to Dismiss

A court may not dismiss a *pro se* complaint pursuant to Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138, 145 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When considering a motion to dismiss, courts must accept as true the material facts alleged in the complaint. *See, e.g., Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (citations omitted). Moreover, when deciding whether a *pro se* complaint should be dismissed, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest possible arguments that [it] suggest[s]." *Weixel,* 287 F.3d at 146 (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted)). It is particularly important to read a *pro se* complaint liberally when, as here, it alleges civil rights violations. *See Morales v. Mackalm,* 278 F.3d 126 (2d Cir.2002) (per curiam) ("Because Morales' complaint alleges civil rights violations and he proceeded *pro se* in the district court, we must construe his complaint with particular generosity.") (citing *Vital v. Interfaith Med. Ctr.,* 168

---

**1.** "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities...." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995).

F.3d 615, 619 (2d Cir.1999)); *Weixel*, 287 F.3d at 146 (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir.2001)). As such, this Court will read Plaintiff's allegations so as to "raise the strongest arguments that they suggest." *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted)).

### III. *Due Process Claim*

Plaintiff contends that his procedural due process rights were violated when he was placed in keeplock without a hearing. The placement of an inmate in restrictive confinement must be preceded by procedural due process where "the confinement or restraint creates an 'atypical and significant hardship' under *Sandin* [*v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)], and the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam).

■■■ Plaintiff was in keeplock for a short period of time (7½ days) and he does not allege that this confinement was under unusual circumstances. Magistrate Judge Homer correctly found that, based on these facts, Plaintiff failed to allege an "atypical and significant hardship" and consequently failed to state facts that might show that he has suffered an injury to a constitutionally protected liberty interest. *See Williams v. Kane*, No. 95 Civ. 0379, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (noting that "the decisions in the Second Circuit are unanimous that keeplock ... confinement of 30 days or less in New York prisons is *not* 'atypical or significant hardship' under *Sandin*" and collecting cases); *see also Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.1998) (stating that a district court need not provide a detailed explanation for its finding that a plaintiff has failed to allege a violation of a constitutionally protected liberty interest when the plaintiff was in segregated confinement for a relatively short period of time and does not allege any unusual conditions).

Plaintiff now claims that New York prison regulations create a liberty interest in remaining free from keeplock confinement without notice and an opportunity to be heard. Even if this is so, Plaintiff has still not alleged that he has suffered an atypical and significant hardship. As indicated above, the existence of a state-created liberty interest and the sufferance of an atypical hardship must *both* be alleged. Because Plaintiff has failed to allege the latter, his due process complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV. *Retaliation Claim*

#### A. Legal Standard Governing Retaliation Claims

Plaintiff also bases his § 1983 claim on the ground that Defendant placed him in keeplock in retaliation for the authorized legal advice he gave Rivera as part of his prison work assignment. The Second Circuit has recognized that "a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) (per curiam)). However, because of "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)).

Claims of retaliation will be dismissed unless the plaintiff advances "non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Morales*, 278 F.3d at 131 (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001)).

## B. Constitutionally Protected Speech or Conduct

Read liberally, Plaintiff's complaint alleges that his speech and conduct are protected by the constitutional guarantees of freedom of expression and the right to petition the government for the redress of grievances. The Government counters with the assertion that the Supreme Court in *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001), held that First Amendment protection does not extend to an inmate's provision of legal assistance to another inmate. The Government also seems to argue that *Shaw* forecloses the argument that Plaintiff's conduct is protected by the constitutional right to petition the government for the redress of grievances.[2]

### 1. First Amendment Protection of Inmate Communication

"[R]estrictions on prisoners' communications to other inmates are constitutional if the restrictions are 'reasonably related to legitimate penological interests.'" *Shaw*, 532 U.S. at 225, 121 S.Ct. 1475 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *see also Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995) ("A prison inmate ... retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.") (citations omitted). In *Turner*, the Supreme Court directed courts to evaluate four factors when inquiring into whether restrictions on inmate communication are reasonably related to penological interests. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254 (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)). The second factor is whether "alternative means of exercising the right" are available to inmates. *Id.* The third factor "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, courts should inquire into "'the absence of ready alternatives' available to the prison for achieving the governmental objectives." *Shaw*, 532 U.S. at 230, 121 S.Ct. 1475 (quoting *Turner*, 482 U.S. at 90, 107 S.Ct. 2254).

Defendant maintains that the Supreme Court's recent decision in *Shaw* held that an inmate's provision of legal assistance to another inmate is not protected under the First Amendment and therefore cannot provide the basis of a retaliation claim. However, in *Shaw*, the Supreme Court held that an inmate does not have a *special* constitutional right to provide unauthorized legal assistance to another inmate. The Supreme Court did not hold that inmate-provided legal assistance is not constitutionally protected. Instead, it held

---

**2.** In its Memorandum of Law, the Government states that "to the extent that plaintiff's claim is premised upon his efforts to petition for the redress of grievances on behalf of inmates other than himself, his claim is deficient as a matter of law and must be dismissed." (Defendant's Memorandum of Law at 8) (citing *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)).

that such conduct must be evaluated under the standard set forth in *Turner*, rather than under a heightened standard that accords greater protection to legal (as opposed to non-legal) communication. *See Shaw*, 532 U.S. at 228, 121 S.Ct. 1475 ("[T]he question presented here simply asks whether Murphy possesses a First Amendment right to provide legal advice that *enhances* the protections otherwise available under *Turner*.") (emphasis added). Indeed, far from obviating the *Turner* inquiry, the Supreme Court in *Shaw* remanded the case for a determination of whether the Plaintiff's provision of legal advice is constitutionally protected under *Turner*. *Id.* at 232, 121 S.Ct. 1475. It is to that inquiry which I now turn.

■ The Court must determine whether the placement of Plaintiff in keeplock because he provided authorized legal assistance to another inmate as part of his assigned work activities is "reasonably related to legitimate penological interests."[3] Because Defendant contended in its Memorandum of Law that *Shaw* held that Plaintiff's conduct was not constitutionally protected, it did not address the *Turner* factors. As such, Defendant failed to identify any government interest that was advanced by the placement of Plaintiff in keeplock. While in future cases the Government may be able to identify government interests that are supported by punishing inmates for conducting authorized activities that were part of their assigned prison job, this Court finds it difficult to conceive of such interests.

The second *Turner* factor also weighs against the Government. It seems that Plaintiff had no alternative means of providing authorized legal assistance to Rivera as part of Plaintiff's assigned employment.

Under the third *Turner* factor, courts must examine the impact that accommodation of Plaintiff's asserted constitutional right to provide authorized legal assistance may have. The Supreme Court has observed that "[i]n the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Turner*, 482 U.S. at 90, 107 S.Ct. 2254. However, prohibiting prison officials from placing inmates in keeplock for providing authorized legal assistance as part of the inmate's job assignment is not likely to have "a significant 'ripple effect' on fellow inmates or on prison staff." *Id.*

Finally, courts should inquire into whether ready alternatives for achieving the governmental objectives are available to the prison. However, this factor is of limited relevance in the instant case because the Court is not aware of a legitimate governmental interest that is furthered by placing Plaintiff in keeplock for conducting assigned activities.

Based on this inquiry into the four *Turner* factors, this Court finds that the placement of an inmate in keeplock because he provided authorized legal assistance to another inmate as part of his assigned em-

---

**3.** There is, of course, a dispute as to what conduct is actually at issue in this case. Plaintiff alleges that he was placed in keeplock in retaliation for providing legal assistance to another inmate. It seems that the Defendant has maintained that Plaintiff was placed in keeplock because he placed a password on a prison computer and provided unauthorized legal assistance. (Sgt. Le-

France Memorandum to Lt. Moore dated May, 26, 2000 (attached as exhibit A to Defendant's Memorandum of Law)). In the context of a motion to dismiss, this Court must accept the material facts alleged in the complaint as true. *Cohen*, 25 F.3d at 1172. This Court therefore applies the *Turner* factors to the conduct Plaintiff alleges caused Defendant to place Plaintiff in keeplock.

ployment activities is not reasonably related to legitimate penological interests. Plaintiff's complaint therefore properly alleges that Defendant engaged in unconstitutional conduct.

2. *Right of Petition for Redress of Grievances*

In his complaint, Plaintiff alleges that he was placed in keeplock in retaliation for exercising his constitutional right "to utilize" the prison grievance system. (Compl.¶ 14.) Reading Plaintiff's complaint liberally, it appears that Plaintiff bases his retaliation claim on the constitutionally protected right to file inmate grievances. *See Morales,* 278 F.3d at 131 ("[F]iling a grievance is protected activity.") (citation omitted); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[Plaintiff's] filing of a grievance and attempt to find inmates to represent the grievants is constitutionally protected.... [R]etaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (citing *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988)); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y. 1990) ("It is well established [that] a claim for relief can be stated under § 1983 for job reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his legal rights or for helping other inmates to petition for redress of their grievances.") (citation omitted); *Salahuddin v. Mead,* No. 95 Civ. 8581, 2002 WL 1968329, at *3 (S.D.N.Y. Aug. 26, 2002) ("Filing a grievance against a prison officer is protected by the First and Fourteenth Amendments of the U.S. Constitution.") (citation omitted); *Walker v. Pataro,* No. 99 Civ. 4607, 2002 WL 664040, at *18 (S.D.N.Y. April 23, 2002) (Peck, M.J.) ("The law is clear that prison officials may not retaliate against an inmate for exercising his constitutional rights, including the right to file a prison grievance.") (citations omitted). However, Plaintiff's complaint does not allege that he was placed in keeplock for filing his own grievance. Rather, he claims that he was placed in keeplock for helping Rivera file a grievance.

■ Plaintiff has standing to argue that Defendant's placement of Plaintiff in keeplock was unconstitutional because it interfered with Rivera's right to petition for the redress of grievances. *See Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977); *see also Gibbs v. Hopkins,* 10 F.3d 373, 378–79 (6th Cir. 1993); *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir.1979); *Rhodes v. Robinson,* 612 F.2d 766, 769 (3d Cir.1979); *Buise v. Hudkins,* 584 F.2d 223, 227 (7th Cir.1978). The plaintiff in *Johnson* was a "jailhouse lawyer" who had been transferred to a maximum security building for providing legal assistance to other inmates. The Supreme Court found that the prison regulation that prohibited inmates from providing legal assistance to other inmates was unconstitutional unless inmates had alternatives to inmate assistance. *Johnson,* 393 U.S. at 490, 89 S.Ct. 747. In *Haymes,* the Second Circuit held that a prisoner who was transferred for violating a prison rule that prohibited inmates from providing legal assistance to other inmates had standing to challenge the constitutional validity of the rule. *See Haymes,* 547 F.2d at 191. Similarly, Plaintiff has standing to argue that Defendant's actions, allegedly taken in retaliation for providing legal assistance to another inmate, were unconstitutional because they interfered with Rivera's right to petition for the redress of grievances.

Plaintiff's complaint merely alleges that Defendant interfered with Plaintiff's right "to utilize" the grievance system. It does not allege that Defendant's placement of Plaintiff in keeplock interfered with Rivera's right to file a grievance. Under these circumstances, Plaintiff shall be allowed to amend his complaint so that it properly alleges a claim based on the right to petition the government for the redress of grievances. In particular, Plaintiff must allege that by placing Plaintiff in keeplock, Defendant interfered with Rivera's right to file a grievance. *See Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require[ ] that the district court give [Plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them.") (citation omitted); *Gibbs,* 10 F.3d at 379 (reversing grant of summary judgment and allowing Plaintiff to amend his complaint so that it properly alleges a claim based on denial of access to the courts).

## C. Adverse Action

"To adequately plead an adverse action, a plaintiff must allege that defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.' " *Morales,* 278 F.3d at 131 (quoting *Dawes,* 239 F.3d at 492). At this stage in the action, Plaintiff's claim that he was placed in keeplock for 7½ days is properly construed as alleging an adverse action. *See Morales,* 278 F.3d at 132 (finding that, at motion to dismiss stage, "the allegation that defendants transferred Morales to a psychiatric facility must be construed as describing an adverse action"); *Wells v. Wade,* No. 96 Civ. 1627, 2000 WL 1239085, at *2–4 (S.D.N.Y. Aug. 31, 2000) ("[A] rational trier of fact could find that the filing of a frivolous misbehavior report that resulted in thirteen days of

pre-hearing 'keeplock' confinement would be likely to chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment: namely, pursuing a prison grievance.") (internal quotations omitted); *Herron v. Harrison,* 203 F.3d 410, 416 (6th Cir.2000) (stating that "this court has found that placing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights") (internal quotation marks and citations omitted).

## D. Causal Connection

Among the factors that are relevant when determining whether a complaint alleges a causal connection between the constitutionally protected conduct and the allegedly retaliatory action are the temporal proximity between the plaintiff's constitutionally protected conduct and the defendant's allegedly retaliatory actions and the defendant's admission of a retaliatory motivation. *See Colon,* 58 F.3d at 872–73. Plaintiff alleges that on April 26, 2000, he learned that Rivera had been placed in keeplock and that prison officials were trying to determine who had helped Rivera with his appeal. (Compl.¶ 10) Plaintiff then gave a copy of Rivera's appeal to a supervisor at the prison law library and, it seems, identified himself as the person who assisted Rivera. *Id.* On April 28, 2000, Defendant placed Plaintiff in keeplock. (*Id.* at ¶ 11.) In addition, Plaintiff alleges that Defendant told Plaintiff that he was placed in keeplock for assisting Rivera. *Id.* In other words, Plaintiff alleges that Defendant placed him in keeplock two days after Plaintiff told the law library supervisor that he assisted Rivera and that Defendant admitted to taking such action in retaliation for providing legal assistance to Rivera. These allegations are sufficient to describe a causal connection between

Plaintiff's constitutionally protected conduct and Defendant's action.

## V. Allegation of Physical Injury

■ Defendant argues that Plaintiff's claim should be dismissed because he fails to allege a physical injury as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(e). 42 U.S.C. § 1997e(e) provides:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Plaintiff has failed to allege a physical injury. However, Plaintiff has not brought a § 1983 claim "for mental or emotional injury." Rather, he has brought a claim for violations of his First Amendment rights. The physical injury requirement in 42 U.S.C. § 1997e(e) therefore does not apply to the instant action. *See, e.g., Cancel v. Mazzuca*, 205 F.Supp.2d 128, 138 (S.D.N.Y.2002) (holding that 42 U.S.C. § 1997e(e) does not apply to actions for First Amendment violations) (citations omitted).

## VI. Qualified Immunity

"Qualified immunity shields public officials from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time." *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir.2002) (citations omitted). The qualified immunity defense is available when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Id.* (quotation omitted). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the

defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 199, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The Supreme Court has recently explained that when considering a defendant's assertion of qualified immunity, courts must first address the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. It has already been found, *supra*, that the facts alleged in Plaintiff's complaint, if true, show that Defendant violated Plaintiff's First Amendment rights.

The Court must next address whether this First Amendment right was clearly established at the time Defendant allegedly violated the right. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Id.* at 201, 121 S.Ct. 2151. The relevant question is not whether it was clearly established that Plaintiff has First Amendment rights. Rather, the Court must ask whether "the state of the law in [2000] gave respondent[ ] fair warning that [his] alleged treatment of [Plaintiff] was unconstitutional." *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). This Court is unaware of a Supreme Court case or a case in the Second Circuit that addresses facts that are analogous to those presented here. However, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Id.* (quoting *U.S. v. Lanier*, 520 U.S. 259, 270–71, 117 S.Ct. 1219, 137 L.Ed.2d 432) (quotation omitted). Consequently, "officials can still be on notice that their conduct

violates established law even in novel factual circumstances." *Id.*

The standard announced in *Turner* is well-established and has been applied in many cases in this Circuit. Defendant therefore had fair warning that he could not restrict prisoner communications unless such restrictions were reasonably related to legitimate penological interests. Accepting the material facts alleged in Plaintiff's complaint as true, there appears to be no legitimate penological interest that was advanced by placing Plaintiff in keeplock for authorized communications made while Plaintiff performed his assigned job. Plaintiff may therefore be able to show that the state of the law in 2000 gave Defendant fair warning that the placement of Plaintiff in keeplock was unconstitutional.

Notwithstanding the alleged violation of clearly established law, Defendant may still be entitled to qualified immunity if Plaintiff does not allege facts that could support a finding that Defendant's actions were objectively unreasonable. *Poe v. Leonard,* 282 F.3d at 146–47. Plaintiff has alleged facts which may show that Defendant acted unreasonably by placing Plaintiff in keeplock. In particular, Plaintiff may be able to show that it would have been unreasonable for Defendant to believe that the placement of an inmate in keeplock for performing his work assignment furthers legitimate penological interests. Plaintiff may further show that because it was unreasonable to believe that placing Plaintiff in keeplock advanced penological interests, it was unreasonable to believe that placing Plaintiff in keeplock was constitutional.

## VII. *Conclusion*

Accordingly, it is hereby

ORDERED, that Defendant's Motion to Dismiss is **DENIED**; and it is further

ORDERED, that Plaintiff shall have **30 days** to file a motion to amend his complaint to include a proper claim that Defendant's actions were in violation of the right to petition the government for the redress of grievances. An unsigned copy of the proposed amended pleading must be attached to a motion to amend. **The proposed amended pleading must be a complete pleading which will supersede the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference.** The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading; and it is further

ORDERED, that Plaintiff's failure to file a motion to amend his complaint within 30 days shall result in the **DISMISSAL** without further Order of the Court of that portion of Plaintiff's complaint that demands relief on the ground that Defendant violated the right to petition the government for the redress of grievances; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.