**Jason B. NICHOLAS, Plaintiff–Appellant,**

**v.**

**C. DAVIS, Captain at Wallkill Correctional Facility; C.O. Ross; Clement Capuano, Superintendent of Ulster Correctional Facility, Defendants–Appellees.**

No. 03–0011.

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

Jason B. Nicholas, Warwick, NY, pro se.

Andrea Oser, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York (Marcus J. Mastracco, of counsel), for Defendants–Appellees.

PRESENT: WINTER, CALABRESI, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

In January 2000, Plaintiff–Appellant Jason Nicholas, acting *pro se*—and possessed with substantial legal talent—filed this suit in the United States District Court for the Northern District of New York. In his complaint, Nicholas alleged that the defendants violated his constitutional rights while he was incarcerated in Wallkill Correctional Facility. The underlying facts are as follows: In December 1999, the New York Department of Correctional Services (DOCS) was investigating a threat of a state-wide inmate protest (aimed at increasingly restrictive parole policies and other prison conditions), which was rumored to be planned for January 1, 2000 ("the Y2K protest"). On December 28, 1999, the plaintiff was quoted in an article in *The Village Voice* about the possible Y2K protest, saying "[t]he feeling is that people died at Attica for what we had, for the so-called privileges we're losing," and that "[t]he state is chipping away at that standard of living. First it was [the elimination of] work release [for violent offenders], then college programs, and now parole. Politicians don't want to hear our complaints, so that leaves very little avenues open for us to gain political power, to try to improve things or at least to arrest this slide." Jennifer Gonnerman, *Strike Behind Bars*, Village Voice, Dec. 22–28, 1999.

The article came to the attention of the prison administration, and defendant Ross, a Wallkill Correction Officer, was ordered to search the plaintiff's cell. According to Johnson and the district court, Ross confiscated (1) four copies of a flyer for a Martin Luther King Day march, (2) a piece of paper listing the addresses of several New York newspapers and prison advocacy groups, (3) a letter describing a prisoner advocacy group called "Foundation for Merit Time, Inc.," (4) a business card of Robert Gangi, Chairman of the Correctional Association of New York, and (5) a letter from a Vassar College student, a Ms. Bartlett, describing an act of civil disobedience and discussing the techniques that the protestors had used to delay their dispersal by law enforcement officers.

Nicholas was put into solitary confinement and notified of the charge against him. On January 5, 2001, the prison conducted a disciplinary hearing. Based on that hearing, and evidence consisting of the letter from Ms. Bartlett and the statements plaintiff made to *The Village Voice,* Nicholas was found guilty of a violation of DOCS Rule 104.12, which provides: "[i]nmates shall not lead, organize or encourage other inmates to participate in work stoppages or other actions that would be detrimental to the order of the facility." Nicholas was sentenced to ninety days in solitary confinement and loss of one year of good time credits as well as certain other privileges such as access to the commissary. The plaintiff appealed to the Donald Selsky, Director of DOCS' Inmate Disciplinary program, who overturned Nicholas's conviction because "the description of [the] incident in [the] misbehavior report fails to support the charge of demonstration." Nicholas's good-time credits were restored, but by the time his conviction was reversed he had undergone fifty-nine days in disciplinary segregation.[1] The plaintiff also alleges that for about twenty of those days, he was confined in a cell that was kept lighted twenty-four hours a day, and that this resulted in sleep deprivation, severe headaches, nausea, palpitations, altered perceptions, and loss of equilibrium and concentration.

Nicholas brought suit pursuant to 42 U.S.C. § 1983 alleging that defendants violated his due process rights by convicting him of a disciplinary infraction in the absence of any reliable evidence, and retaliated against him in violation of his First Amendment rights.[2] The district court granted summary judgment in favor of the defendants on all claims. Petitioner appeals these determinations, and challenges the district court's refusal to permit him to amend his complaint a second time. We review plaintiff's due process and retaliation claims *de novo.* Inmates have a constitutional right to due process before any "atypical and significant hardship" is imposed upon them. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Whether or not disciplinary segregation rises to this level depends on all of the circumstances of the confinement. *See Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000). In particular, we consider both the duration and the conditions of the challenged confinement. *See Wright v. Coughlin,* 132 F.3d 133, 136–37 (2d Cir. 1998). We need not, however, decide whether Nicholas' fifty-nine days in disciplinary segregation, in conjunction with his allegation that his cell was constantly illuminated for much of that time and that this seriously interfered with his sleep and health, meets the *Sandin* requirements, because his due process claim fails on the merits.

██ Plaintiff claims that the evidence offered in his initial disciplinary hearing

---

1. For most of this time, Nicholas was confined in the Special Housing Unit (SHU). According to New York DOCS regulations, as we have previously characterized them, "[c]onfinement in the SHU is a form of solitary imprisonment. In addition to being separated from the general prison population, SHU inmates are limited in the prison issue items and personal belongings they may possess. Also limited are shower and exercise privileges." *Walker v. Bates,* 23 F.3d 652, 655 (2d Cir.1994) (citation omitted).

2. Plaintiff raised an Eighth Amendment challenge to the conditions of his solitary confinement in his initial complaint, which the district court rejected because the implicated defendant, Capuano, died after the commencement of the lawsuit, and Nicholas did not request that a party be substituted within 90 days, as required by Fed.R.Civ.P. 25. Plaintiff abandons this Eighth Amendment claim on appeal.

did not meet the due process standard set out in *Superintendent, Massachusetts Correctional Institution v. Hill.* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). That is, he asserts that no "evidence from which the conclusion of the administrative tribunal could be deduced' " was proffered. *Id.* at 455, 105 S.Ct. 2768 (citation omitted). We disagree. The letter from Ms. Barnett indicated that the plaintiff had specifically solicited information about "the logistics of organizing a demo[nstration]— especially one that involves civil disobedience." The information Ms. Barnett offered in response included drawings showing how individuals could chain and lock themselves together to make it difficult to separate them. Under the circumstances, where prison officials had credible cause to fear a major and coordinated act of civil disobedience in the prison, such a letter, along with the statements that the plaintiff made to the *Village Voice,* suffice-if barely-as "some evidence," *id.,* that plaintiff was organizing or encouraging other inmates to participate in such a strike. The fact that the decision was later overturned is not to the contrary, because in order to find plaintiff guilty on the merits, substantial, rather than "some," evidence was required. *See, e.g., Matter of Foster v. Coughlin,* 76 N.Y.2d 964, 966, 563 N.Y.S.2d 728, 565 N.E.2d 477 (1990).

▪ The plaintiff's First Amendment claim similarly fails on the merits. It is unclear, under current law, whether Nicholas exhausted this claim by raising it in his disciplinary hearing and on the administrative appeal from that hearing. We need not, however, reach this issue, because, like Nicholas' due process claim, his retaliation claim fails on the merits. In order to succeed on a retaliation claim, a plaintiff " 'must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir. 2002). Certain aspects of the speech that Nicholas was engaged in were certainly protected under the First Amendment, but they were not the aspects of his speech for which he was punished. Nicholas was disciplined because he solicited and possessed practical information about how to conduct civil disobedience, at a time when prison officials had good cause to fear a potentially dangerous and coordinated act of such civil disobedience, not because prison officials objected to his criticism of parole policy or his interest in prisoners' rights causes.

▪ Finally, we also reject Nicholas' claim that he should have been permitted to amend his complaint a second time. We review the district court's denial of the plaintiff's request for leave to amend his complaint under an abuse of discretion standard. *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 87 (2d Cir.2002). A district court does not abuse its discretion in denying leave to amend where, as here, the motion is unduly delayed and that delay is not supported by good cause. *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000). Three months elapsed between when the plaintiff learned of the alleged involvement of the defendant whom he wished to add to his complaint and the filing of his motion to amend his complaint. In any event, since the claims against the additional defendant were the same as those that were rejected on the merits, the amendment would have made no difference. Under the circumstances, the district court did not abuse its discretion in denying the motion.

We have considered all of petitioner's claims and find them meritless. We therefore AFFIRM the judgment of the district court.